1043-21100 #1963119

# IN THE UNITED STATES DISTRICT COURT
# SOUTHERN DISTRICT OF TEXAS
# HOUSTON DIVISION

| | |
|---|---|
| **GCC Supply and Trading, LLC**<br><br>**Plaintiff**<br><br>**VERSUS**<br><br>**Maritime Borneo LLC; Handy Tankers K/S;**<br><br>**Defendants** | **CIVIL ACTION NO:** |

## COMPLAINT FOR DECLARATORY JUDGMENT, PRELIMINARY AND PERMANENT INJUNCTION, AND DAMAGES

Plaintiff, GCC Supply & Trading, LLC, f/k/a GCC Bunkers LLC ("GCC" or "Plaintiff"), brings this action by way of complaint against Maritime Borneo LLC ("Maritime Borneo") and Handy Tankers K/S ("Handy Tankers") (collectively referred to as "Defendants") and would respectfully show the Court as follows:

### NATURE OF THE ACTION

1.

Plaintiff, GCC, seeks a declaration that the arbitration instituted by Maritime Borneo and Handy Tankers with the London Maritime Arbitrators Association (the "LMAA Arbitration") has been instituted by Maritime Borneo and Handy Tankers in the absence of any valid agreement to arbitrate and is therefore operating *ultra vires* in such a way that any resulting decision or final award would exceed the authority of the arbitrator. GCC further seeks preliminary and permanent injunctive relief to stay the LMAA Arbitration while the Court adjudicates these issues and to preclude the Defendants from proceeding with any arbitration proceeding, including the LMAA Arbitration.

2.

Plaintiff also brings a breach of contract action and an action for unjust enrichment against Defendants for their failure to pay Plaintiff the amounts Plaintiff is owed.

**PARTIES**

3.

Made Plaintiff herein is GCC Supply & Trading, LLC, which is now and was at all relevant times hereto, a limited liability company organized and existing under the laws of the State of Texas with its principal place of business in 3773 Richmond Avenue, Suite 250, Houston, Texas, 77046 and is engaged in the business of selling and supplying bunker fuel to vessels.

4.

Made Defendants herein are the following:

a) Maritime Borneo LLC, which is now and was at all relevant times hereto, a company organized and existing under the laws of Denmark and/or Liberia with an office and principal place of business in Copenhagen, Denmark and/or Monrovia, Liberia, which upon information and belief was the owner of the vessel OM BORNEO (IMO No. 9341445). Upon information and belief, it maintains registered office addresses at Holmbladsgade 133, Copenhagen, 2300, Denmark and/or 80 Broad Steet, Monrovia, Liberia;

b) Handy Tankers K/S, which is now and was at all relevant times hereto, a corporation organized and existing under the laws of Denmark with an office and principal place of business in Copenhagen, Denmark, which upon information and belief was the manager of the vessel OM BORNEO (IMO No. 9341445). Upon

information and belief, its registered office address is Holmbladsgade 133, Copenhagen, 2300, Denmark.

## JURISDICTION AND VENUE

5.

This is a case of admiralty and maritime jurisdiction pursuant to 28 U.S.C. § 1333 and is an admiralty and maritime claim within the meaning of Rule 9(h) of the Federal Rules of Civil Procedure. This claim relates to the breach of contracts for the sale of marine fuel, which are maritime contracts.

6.

Further or alternatively, this Court has original jurisdiction of this matter since this is an action for declaratory and injunctive relief arising under the Federal Arbitration Act, 9 U.S.C. §2, et seq., the Declaratory Judgment Act, 28 U.S.C. §§2201-2202, and Federal Rule of Civil Procedure 57.

7.

Further or alternatively, this Court has subject matter jurisdiction over this dispute pursuant to 28 U.S.C. §§ 1331, 1332, and 1367.

8.

Venue is proper pursuant to 28 U.S.C. §§1391(b)(2) and 1391(c)(3) because a substantial part of the events or omissions giving rise to the claim occurred in this district and because the defendants are foreign entities.

9.

Additionally, the agreement from which this lawsuit arises stipulates that jurisdiction and venue are proper in this Court.

## BACKGROUND FACTS

10.

On or about March 29, 2023, an agreement was reached wherein GCC agreed to sell marine fuel ("bunkers") to Handy Tankers. Throughout the entire sale process, Cargill International SA ("Cargill") acted as Handy Tankers' agent, and the parties communicated with each other through bunker stem communications sent on Handy Tankers' behalf by Cargill.

11.

On March 29, 2023, at 11:12 a.m., Cargill submitted an inquiry to GCC via email seeking to purchase on behalf of Handy Tankers 415 metric tons ("MT") of VLSO 0.5% sulfur fuel and 140 – 210 MT of DMA .10% fuel, for an estimated delivery date of April 13, 2023 for the OM BORNEO. *See* Exhibit "A", pp. 6-9.

12.

On March 29, 2023, at 11:20 a.m., GCC responded to Cargill via email providing a quote of $550/MT for RMG 380 0.5% sulfur fuel and $790/MT for MGO-DMA 0.1% sulfur fuel. GCC's email made clear that the quoted price was subject to the applicability of GCC's Terms and Conditions for the Sale of Marine Bunkers – Edition 2021 ("GCC Terms and Conditions"), provided the website address for review of GCC's Terms and Conditions, and stated "30 day time bar quality and 30 day time bar for quantity." *See* Exhibit "A", pp. 2-6.[1]

13.

On March 29, 2023, at 11:40 a.m., Cargill responded via email to GCC stating "Firm counter 545/768+b". Thus, Cargill, on behalf of Handy Tankers, responded to GCC's offer with a

---

[1] The email's "sent" field indicates that it was sent at 6:20 p.m.; the email was generated by Cargill's computer system, a company headquartered in Geneva, Switzerland, which is in the CEST time zone. On the day the email was sent, the CDT time zone, where GCC is located, was 7 hours behind Geneva, Switzerland. For this reason, the email was sent at 11:20 a.m. CDT.

4

counter offer of $545/MT for RMG 380 0.5% and $768/MT for MGO-DMA 0.1% sulfur, plus barging costs. Cargill's email made no mention of its own terms applying or any disagreement with GCC's Terms and Conditions applying to the bunker stem. *See* Exhibit "A", pp. 1-2.

14.

On March 29, 2023, at 11:53 a.m., Cargill, on behalf of Handy Tankers, responded to GCC via email confirming its intention to purchase 415 MT of RMG 380 0.5% fuel at $545/MT and between 140 – 210 MT of MGO-DMA 0.1% fuel at $768/MT. *See* Exhibit "B".

15.

On March 29, 2023, at 12:39 p.m., GCC sent an email to Cargill issuing a Sales Order Confirmation No. PHY_113886 confirming agreement to sell Handy Tankers 415 MT of RMG 380 0.5% fuel at $545/MT, and Sales Order Confirmation No. PHY_113916, between 140 – 200 MT of MGO-DMA 0.1% fuel at $768/MT. *See* Exhibit "B". Both Sales Order Confirmations issued on March 29, 2023 state that GCC's Terms and Conditions apply and provide the website address where the GCC Terms and Conditions may be reviewed. With the issuance of the Sales Order Confirmations, an agreement was bound for bunker stem nomination whereby GCC agreed to supply Handy Tankers with the requested bunker fuel pursuant to GCC's Terms and Conditions.

16.

Neither Cargill nor Handy Tankers provided any protest or response to the application of GCC's Terms and Conditions to the bunker nomination as noted in the Sales Order Confirmations; for this reason, GCC's Terms and Conditions became incorporated into the parties' agreement and thus binding. GCC had previously signed an agreement with Cargill on March 24, 2021, pursuant to Cargill's Terms & Conditions for Purchase of Marine Fuel. While GCC expressly denies that Cargill's Terms and Conditions apply, Cargill's Terms and Conditions nonetheless make clear that

"in the event of a conflict between the Nomination and these Terms and Conditions, the Nomination shall govern." *See* Exhibit "C", p. 2.

17.

The GCC's "Terms and Conditions for the Sale of Marine Bunkers - Edition 2021" would apply to the sale ("GCC Terms and Conditions"), provide:

i. Under Article 1.3, "[g]eneral purchase, sales, or trading conditions of another party will not apply, unless expressly accepted in writing by GCCST."

ii. Under Article 11.2, "[a]lways without prejudice to Section 8.13 herein, <u>any and all claims concerning the quality of the Bunkers delivered or time consumed for the entire operation, shall be submitted to the Seller in writing within fourteen (14) days after delivery</u> with a clear statement as to the nature or the claim(s) along with appropriate supporting documentation, failing which any rights to complain or claim compensation of whatever nature shall be deemed to have been waived and absolutely barred for all purposes. Furthermore, and notwithstanding any other Section of these GTC, Seller shall not be responsible for any claim whatsoever arising in circumstances where there is or has been commingling of Bunkers delivered by Seller with other fuel aboard the Vessel or Buyer's Delivery Vessel. Any such claim shall be submitted in accordance with the Notice requirements set forth in Section 19." (emphasis added)

iii. Under Article 12.1, "<u>[s]eller shall not be liable for any exemplary, consequential, or incidental damages, including, without limitation, deviation costs, demurrage, loss of time, loss of cargo or charter cancelling date, loss of hire, loss of income and/or earnings and/or profits, or for any damage to any Vessel or Buyer's delivery vessel or to their engines or tanks</u>. In any event and notwithstanding anything to the contrary herein, liability of the Seller shall under no circumstances exceed the invoice value of

      the Bunkers supplied under the relevant agreement to the relevant Vessel." (emphasis added)

    iv. Under article 18.3, "[w]ithout prejudice to any other Section herein, the Buyer and Seller agree that any suit, claim, dispute, controversy or action arising out of or in connection with this Agreement, including without limitation, any dispute or action with multiple defendants/claimants and indemnity claims, <u>shall be litigated, if at all, in a federal court located in Harris County, Texas to the exclusion of the courts of any other country, state, county, or city</u>. In the event that a federal court lacks jurisdiction, then the Buyer and Seller agree to litigate any suit, claim, dispute, controversy or action arising out of or in connection with this Agreement, including without limitation, any dispute or action with multiple defendants/claimants and indemnity claims, in a state court of competent jurisdiction located in Harris County, Texas to the exclusion of the courts of any other country, state, county, or city." (emphasis added)

A copy of GCC Terms and Conditions is attached hereto as Exhibit "D."

18.

On April 11, 2023, Handy Tankers requested to modify the quantity of the "DMA" bunkers (distilled marine fuel) set in the original agreement so that GCC could deliver a smaller quantity of bunkers due to the vessel's capacity. GCC accepted the change to the quantity of DMA bunkers requested by Handy Tankers, with an email sent to Handy Tankers on April 12, 2023 (the "Bunker Stem Amendment"), which is attached hereto as Exhibit "E."

19.

As agreed with Handy Tankers, the bunkers were delivered directly by GCC to the OM BORNEO on April 13, 2023. The bunkers' quality was:

a. in compliance with GCC Terms and Conditions, as shown in the Sales Order Confirmations that GCC issued and sent to Handy Tankers on March 29, 2023, attached hereto as Exhibit "F," and in the invoice sent on April 25, 2023, attached hereto as Exhibit "G," stating that the bunkers would meet the ISO 8217:2010 standard; and

b. compliant with OM Borneo's needs, as stated in the measurements and tests conducted by OM Borneo's Chief Engineer on the date the bunkers were delivered, as reported in the Delivery Note attached hereto as Exhibit "H."

20.

On June 29, 2023, Cargill notified GCC that OM BORNEO sent them a notice stating that it was "facing challenges" with the bunkered fuel supplied by GCC on April 13, 2023. The notice indicated that OM BORNEO had used such fuel since May 21, 2023, but problems arose when the notice was sent, i.e., more than one month after the vessel started using it.

21.

Immediately upon receipt of the notice, GCC offered to debunker the remaining fuel supplied to the vessel in April 2023 and provide it with replacement fuel. GCC did not owe such a duty to Handy Tankers or Cargill but made this offer to minimize the impact of the issues that those parties communicated to exist.

22.

On July 22, 2023, as agreed with Handy Tankers, the remaining bunkers supplied totaling 56 MT of fuel were debunkered from the vessel. GCC provided Handy Tankers with a credit note for the debunkered fuel in the amount of $30,520.00, attached hereto as Exhibit "J".

8

23.

On July 22, 2023, GCC then provided to Handy Tankers replacement and additional fuel totaling 441.95 MT of RMG 380 0.5% Sulphur. The invoice for such additional fuel supplied on July 22, 2023, totaled $255,828.10. A copy of Invoice No. SPINV-003775, dated July 31, 2023, is attached as Exhibit "K".

24.

On October 23, 2023, Handy Tankers then sought to return 294.63 MT of the RMG 380 0.5% Sulphur fuel that was purchased and supplied on July 22, 2023. Although GCC was under no legal or contractual duty to do so, GCC agreed to and did in fact debunker the 294.63 MT of the RMG 380 0.5% Sulphur fuel from the OM BORNEO free of charge. The value of the 294.63 MT of the RMG 380 0.5% Sulphur per MT was $508.00, amounting to $149,672.04 of bunker fuel that was returned by Handy Tankers.

25.

Handy Tankers did not pay any amount toward the Invoice No. SPINV-003775. Thus, $149,672.04 of bunker fuel was returned to GCC, resulting in an open balance on Invoice No. SPINV-003775 in the amount of $106,156.06.

26.

Therefore, the amount of $106,156.06 remains due and owing by Defendants to GCC.

27.

On December 24, 2023, Handy Tankers sent a letter to GCC claiming losses of $484,906.20 for damages to the vessel's engine and costs associated with the repair needed. A copy of the letter is attached hereto as Exhibit "L."

28.

GCC, however, does not owe any amount claimed by Handy Tankers for those alleged damages under GCC Terms and Conditions. The reason is that even assuming, but not conceding, that the bunkers supplied caused such damages, Handy Tankers' claims have not been submitted within thirty days after the bunkers' delivery, as required by Article 11.2 of GCC Terms and Conditions (such term had been extended to thirty days in GCC's communications) and concern damages for which GCC is not responsible under Article 12.1 of GCC Terms and Conditions. *See* Exhibit "D."

29.

In addition, GCC is entitled to receive:

a. Interest on the amount still owed by Handy Tankers, as provided for by Section 10.5 of GCC's Terms and Conditions, which state, in relevant part: "Any delay in payment of the full sum due, as set forth in Sections 10.1, 10.2 and 10.3, shall entitle the Seller to interest at, the rate of 2 (two) per cent per month (compounded monthly for each month [or part thereof] of nonpayment) without prejudice to any rights or remedies available to the Seller." *See* Exhibit "D."

b. A delayed payment administration fee and reasonable attorneys' fees incurred in connection with the collection of overdue payments. Section 10.5 states that "the Seller is entitled to charge a delayed payment administration fee of USD 1.50 per mton supplied, or the equivalent thereof in local currency, with a minimum administration fee of USD 350.00 for each delivery made. All reasonable attorneys' fees and costs incurred by Seller in connection with the collection of overdue payments shall be for the sole account of the Buyer." Section 10.7 likewise

provides that "[a]ll costs borne by the Seller in connection with the collection of overdue payments . . . including but not limited to, reasonable attorneys' fees, whether made in or out of court and in general all costs in connection with breach of any agreement by the Buyer, including but not limited to reasonable attorneys' fees, shall be for the sole account of the Buyer." *See* Exhibit "D."

30.

The invoice for the fuel bunkered on July 22, 2023, specifies that payment to GCC was to be made within thirty days from supply and that "[i]n case of payment after the due date, interest will be charged in accordance with our General Terms and Conditions" *See* Exhibit "K".

31.

Section 10.3 of GCC Terms and Conditions states that "Payment shall be made in full, without any set-off, counterclaim, deduction and/or discount free of bank charges to the bank account indicated by the Seller on the respective invoice(s)." *See* Exhibit "D."

32.

On January 30, 2024, Handy Tankers sent GCC a notice of commencement of arbitration in London, England, with the London Maritime Arbitrators Association (the "LMAA Arbitration") and requested that the London Maritime Arbitrators Association (the "LMAA") appoint an arbitrator for the dispute. See the email attached hereto as Exhibit "I."

33.

As the basis for commencing the LMAA Arbitration against GCC, Handy Tankers invoked Section 24 of Cargill's Terms and Conditions, which provides that:

"24.1   Any dispute shall be referred to and finally resolved by arbitration under the London Maritime Arbitrators Association Rules "the LMAA Rules" in

11

        force as at the time of the reference to arbitration, which Rules are deemed to be incorporated by reference into this Clause 24.

24.2    The Arbitration Tribunal shall be composed of a sole Arbitrator appointed by LMAA.

24.3    The place of arbitration shall be London, England.

24.4    The language(s) of the arbitration shall be English.

24.5    This contract shall be governed by and interpreted in accordance with English law."

See Exhibit "C."

34.

Cargill's Terms and Conditions do not apply to the dispute between Handy Tankers and GCC, and, therefore, Handy Tankers cannot invoke the agreement to arbitrate the dispute contained therein. Cargill's Terms and Conditions provide, under Section 16.1, that they apply, to the exclusion of other parties' terms and conditions, "unless otherwise agreed in writing." In this case, as previously stated, Handy Tankers agreed in writing to apply GCC Terms and Conditions to the bunker sale, to the exclusion of Cargill's Terms and Conditions, when on March 29, 2023, it accepted GCC's counteroffer, and thus, the terms included therein.[2] In addition, GCC has never agreed to be part of the LMAA Arbitration proceeding.

35.

Under the LMAA rules, GCC will be required to respond to Handy Tankers' allegations, raise any defenses, assert any counterclaims, and participate in the arbitration hearings.

---

[2] Under article 1.3 of GCCs' Terms and Conditions, "[g]eneral purchase, sales, or trading conditions of another party will not apply, unless expressly accepted in writing by GCCST."

36.

By participating in the LMAA Arbitration, GCC will inevitably be required to expend significant amounts of time and incur substantial counsel fees and expenses. Therefore, unless Handy Tankers is enjoined from pursuing the LMAA Arbitration, GCC will suffer irreparable harm by being forced to submit to an arbitration proceeding in the absence of any agreement to do so. In contrast, if this Court grants GCC's request for injunctive relief, Handy Tankers may still pursue its claims against GCC in the appropriate forum and will not be left without a remedy.

37.

To the extent GCC appears and defends itself in the LMAA Arbitration, GCC will have waived its rights to defend against Handy Tankers' claims in a court of competent jurisdiction and will be irreparably harmed as a result.

38.

GCC has no adequate remedy at law for being required to arbitrate in the absence of any agreement to do so, and Handy Tankers will not be harmed in any way if the Court enters the requested injunction because Handy Tankers has no right to pursue the LMAA Arbitration it initiated.

39.

The public interest weighs in favor of enjoining Handy Tankers from pursuing its claims in the LMAA Arbitration because arbitration is a matter of consent and not of coercion, and there is no arbitration agreement between the parties. The public interest will also be served because the requested injunction will minimize the risk that the parties will suffer the inconvenience, costs, and delays associated with the LMAA Arbitration only to have any award resulting in the LMAA Arbitration vacated for want of jurisdiction.

## **FIRST CLAIM FOR RELIEF**

### **(Declaratory Judgment as to Non-Arbitrability)**

40.

Plaintiff repeats, realleges, and adopts as if set forth herein the allegations heretofore stated in paragraphs 1 through 39.

41.

The parties have an actual, present, and justiciable controversy as to whether Handy Tankers is eligible to arbitrate its dispute with Plaintiff according to Cargill's Terms and Conditions, and Plaintiff has a reasonable and compelling expectation that its injury will continue in the future in the absence of declaratory relief.

42.

As arbitration is a matter of contract, and a party cannot be required to submit to arbitration a dispute that it has not agreed to submit, Plaintiff petitions this Court to ascertain that a valid agreement to arbitrate does not exist between Plaintiff and Defendants.

43.

Because of the foregoing, Plaintiff is entitled, pursuant to 28 U.S.C. § 2201(a), to a declaration that they are not required to arbitrate Handy Tankers' claims asserted in the LMAA Arbitration and that any arbitration award issued during the LMAA Arbitration against Plaintiff would be null and void.

**SECOND CLAIM FOR RELIEF**

**(Injunctive Relief)**

44.

Plaintiff repeats, realleges, and adopts as if set forth herein the allegations heretofore stated in paragraphs 1 through 39.

45.

Plaintiff has a substantial likelihood of success on the merits regarding the non-arbitrability of Defendants' disputes because there is no arbitration agreement between Plaintiff and Defendants.

46.

If compelled to arbitrate Handy Tankers' claims in the LMAA Arbitration, Plaintiff will suffer immediate and irreparable harm.

47.

The parties in the LMAA Arbitration and, in this case, are identical, and this complaint addresses the same claims that Defendants made in the LMAA Arbitration. Therefore, the outcome of this action would be dispositive of the same claims presented by Defendants in the LMAA Arbitration. For this reason, if the desired preliminary and permanent injunctive reliefs are not granted, adjudicating the same issues in separate actions raises the risk of inconsistent judgments, inconvenience to the parties, and great expense.

48.

The balance of equities favors entry of an injunction in this instance.

49.

Plaintiff has no adequate remedy at law.

50.

The public interest favors entry of an injunction.

51.

Accordingly, the elements supporting preliminary and permanent injunctive relief have been met, and Defendants should be enjoined from proceeding with the LMAA Arbitration against Plaintiff.

### **THIRD CLAIM FOR RELIEF**

### **(Breach of Contract)**

52.

Plaintiff repeats, realleges, and adopts as if set forth herein the allegations heretofore stated in paragraphs 1 through 39.

53.

Handy Tankers purchased bunkers from GCC to provide maritime fuel to OM BORNEO, which was supplied on July 22, 2023. At the same time, as agreed with Handy Tankers, the remaining bunkers supplied were debunkered from OM BORNEO. Handy Tankers has failed to pay GCC the full amount owed under the Invoice, totaling at least $106,156.06.

54.

Such failure by Handy Tankers constitutes a breach of contract by Handy Tankers of Handy Tankers' contract with GCC and gives rise to a claim for breach of contract in favor of GCC and against Handy Tankers in the amount of $106,156.06, plus applicable interest, fees, penalties, and costs.

## FOURTH CLAIM FOR RELIEF

## (Unjust Enrichment)

55.

Plaintiff repeats, realleges, and adopts as if set forth herein the allegations heretofore stated in paragraphs 1 through 39.

56.

In the alternative to the agreements for the sale of bunkers delivered on July 22, 2023, being an unambiguous and enforceable contract, Handy Tankers received a benefit from GCC by receiving the bunkers supplied by GCC on July 22, 2023.

57.

Given the nature of the negotiations and promises made by Handy Tankers to GCC regarding the payment of the bunkers supplied on July 22, 2023, it would be unjust for Handy Tankers to have received those bunkers without compensating GCC for their value.

58.

Handy Tankers accepted and retained the benefit of the bunkers supplied by GCC on July 22, 2023.

59.

As a proximate result of Handy Tankers' unjust enrichment, GCC is entitled to receive the payment promised by GCC in its agreements with GCC in an amount totaling at least $106,156.06 plus applicable interest, fees, penalties, and costs.

**PRAYER FOR RELIEF**

BASED ON THE FOREGOING, Plaintiff, GCC Supply & Trading, LLC, prays:

i. That the Court enters an order preliminarily and permanently enjoining Defendants from proceeding with the LMAA Arbitration against Plaintiff in any way;

ii. That the Court declare that because Defendants have no arbitration agreement with Plaintiff, Defendants' dispute is not arbitrable;

iii. That the Court enter judgment in favor of Plaintiff, and against Handy Tankers, in the amount of $106,156.06, plus pre and post-judgment interest, applicable charges and fees, attorneys' fees pursuant to GCC Terms and Conditions, and any other amount as may be proven herein;

iv. That this Court award Plaintiff its costs of suit; and

v. That this Court grant all other and further relief as justice may require.

Respectfully submitted,

*/s/ Aaron B. Greenbaum*
Aaron B. Greenbaum, T.A. (SDTX - Federal ID No. 2023921, TX Bar No. 24110938)
Rowen F. Asprodites (SDTX – Federal ID No. 3760102; LA Bar No. 33135)
**PUSATERI, JOHNSTON, GUILLOT & GREENBAUM, LLC**
1100 Poydras Street, Suite 2250
New Orleans, LA 70163
Telephone: 504-620-2500
Facsimile: 504-620-2510
Aaron.Greenbaum@pjgglaw.com
Rowen.Asprodites@pjgglaw.com
**ATTORNEYS IN CHARGE FOR GCC SUPPLY & TRADING, LLC**