# GCC Supply & Trading LLC
## Terms and Conditions
## for the Sale of Marine Bunkers
## Edition 2021



EXHIBIT

D

# GCC Supply & Trading LLC
# Terms and Conditions for the Sale of Marine Bunkers
# Edition 2021

**1**     **GENERAL INTRODUCTION**

1.1     This is a full and complete statement of the terms and conditions according to which GCC Supply & Trading LLC (hereinafter called "GCCST") will sell marine bunkers and the Buyer, as defined in Section 2.1, will purchase marine bunkers.

1.2     These conditions apply to all offers, quotations, orders, agreements, services and all subsequent contracts of whatever nature, except where otherwise is expressly agreed in writing by GCCST.

1.3     General purchase, sales, or trading conditions of another party will not apply, unless expressly accepted in writing by GCCST.

1.4     In the case that, for whatever reason, one or more of the (sub)clauses of these general conditions are invalid, the other (sub)clauses hereof shall remain valid and be binding upon the parties.

**2**     **DEFINITIONS**

2.1     Throughout this document the following definitions shall apply:

"Seller"     means GCCST; any office, branch office, affiliate or associate of GCCST; and the GCCST entity whose name is included in the Order Confirmation, sent to the Buyer.

"Buyer"     means the vessel supplied and jointly and severally her Master, Owners, Managers/Operators, Disponent Owners, Time Charterers, Bareboat Charterers and Charterers or any party requesting offers or quotations for or ordering Bunkers and/or Services and any party on whose behalf the said offers, quotations, orders and subsequent agreements or contracts have been made;

"Bunkers"     means the commercial grades of bunker oils as generally offered to the Seller's customers for similar use at the time and place of delivery and/or services connected thereto;

"Owner"     means the registered Owner, Manager or Bareboat Charterer of the vessel;

| | |
|---|---|
| "Vessel" | means the Buyer's Vessel, Ship, Barge or Off-Shore Unit that receives the supply/bunkers; either as end-user or as transfer unit to a third party; |
| ''Nomination'' | means the written request/requirement by the Buyer to the Seller, for the supply of the Bunkers; |
| ''Order Confirmation'' | means the written confirmation as issued by the Seller and forwarded to the Buyer to conclude the conclusion of the negotiated sale/purchase of the Bunkers. In case of conflict between the Nomination and the Order Confirmation, unless the Seller otherwise agrees in writing, the wording and content of the Order Confirmation is deemed to contain the prevailing terms of the Agreement; |
| ''Agreement'' | means the concluded terms for the sale/purchase of the Bunkers; |
| ''Supplier'' | means any party instructed by or on behalf of the Seller to supply or deliver the Bunkers; |
| "Invoice" | means the invoice document containing the final amount due and owing from Buyer to Seller, which shall be issued following the delivery of the Bunkers and execution of the BDN. |
| "Letter of Credit" | means a standby letter of credit that shall be issued in favor of the Seller, through a bank acceptable to Seller, the substance and form of such letter of credit shall be acceptable to Seller in writing, and such letter of credit shall be drawn against draft on sight with the presentment of the Order Confirmation, Invoice, and BDN. |
| "GTC'' | means these General Terms and Conditions which shall govern the contractual regulations between the Seller and the Buyer |
| ''BDN'' | means the Bunker Delivery Note, being the document(s) which is/are signed by the Buyer's representative(s) at the place of the supply of the Bunkers to the Vessel, evidencing the quality and quantity of the Bunkers supplied to and received by the Vessel. |
| "Bailee" | |

**3**　　　　　　　**OFFERS, QUOTATIONS AND PRICES**

3.1　　　　An Agreement shall only be concluded and binding on the Seller when the Seller sends the Order Confirmation to the Buyer. Each Order Confirmation shall incorporate these GTC by reference so that the GTC are considered a part of the Confirmation and Agreement.

3.2　　　　Agreements entered into via brokers, or any other authorized representative on behalf of the Seller, shall only bind the Seller upon the Sellers' broker or other authorized representative sending the Order Confirmation to the Buyer or the Buyer's broker as the case may be.

3.3　　　　The Seller's offer is based on the applicable taxes, duties, costs, charges and price level of components for Bunkers existing at the time of the conclusion of the Agreement. Any later or additional tax, assessment, duty or other charge of whatever nature and however named, or any increase of components for Bunkers or any additional costs borne by the Seller whatsoever caused by any change in the Seller's contemplated source of supply or otherwise, coming into existence after the Agreement has been concluded, shall be added to the agreed purchase price, provided that the Seller shall give the Buyer prior notice of this effect within a reasonable (under the prevailing circumstances) time after the Seller becoming aware of the relevant circumstances.

3.4　　　　All prices and/or tariffs are exclusive VAT, unless specifically stated otherwise. Any VAT or other charge and/or tax applicable and whenever imposed, shall be promptly paid by the Buyer, and unless otherwise agreed in writing all supplies are quoted and invoiced based on quantity calculated in metric tons in vacuum.

**4**　　　　　　　**CREDIT OF VESSEL AND BUYER**

4.1　　　　Bunkers delivered under this Agreement are sold and delivered on the financial credit of the Vessel being supplied, as well as on the credit of the Buyer and the promise of the Buyer to pay. All sales, supply, and provision of Bunkers under this Agreement are made to the registered owner of the Vessel, in addition to any other parties that may be listed as Buyer in the Order Confirmation. Any Bunkers ordered by an agent, manager, charterer, broker or any other party are ordered on behalf of the registered owner of the Vessel and the registered owner of the Vessel shall be considered a principal for payment of the Invoice.

4.2　　　　Buyer is presumed to have authority to bind the Vessel to a lien. Buyer warrants that it is an authorized entity to order Bunkers for and on behalf of the Vessel, and that the Seller shall have a lien on the Vessel for any Bunkers supplied under this Agreement. Buyer warrants that the Bunkers supplied hereunder are for the operation of the receiving Vessel and that Vessel only.

4.3　　　　If the party requesting Bunkers is not the Owner of the Vessel, Buyer assumes the

sole responsibility for communicating the terms and conditions of this Agreement to the Owner of the Vessel prior to the date of delivery. Acceptance of the delivery of the Bunkers by the Vessel shall be considered ratification of this Agreement by the Vessel and the Owner.

4.4     If the party requesting Bunkers is not the Owner of the Vessel, Seller shall have the right (but will not be obligated) to insist as a precondition of sale that a payment guarantee be provided by the Owner or that a Letter of Credit be provided by the Buyer. The Seller shall have the right (but will not be obligated) to cancel any agreement with the Buyer at any time if such payment guarantee or letter of credit is not received upon request thereof from the Seller. The Seller's decision to forego obtaining a payment guarantee under this Section 4.4 shall have no effect on Seller's right to a lien on the Vessel for any Bunkers supplied under this Agreement.

4.5     Any notice by Buyer of a prohibition of lien clause, no-lien clause, or other similar clause in any charter party or other similar document shall be ineffective and invalid if presented to Seller following the issuance of the Order Confirmation. In the event Buyer provides notice of such a restriction, Seller shall have the right (but will not be obligated) to insist as a precondition of sale that prior to delivery a payment be made in by cash or equivalent or that a Letter of Credit be provided by the Buyer. The Seller shall have the right (but will not be obliged) to cancel any agreement with the Buyer at any time if such cash or equivalent or letter of credit is not received upon request thereof from the Seller. The Seller's decision to forego obtaining a cash or equivalent or a Letter of Credit under this Section 4.5 shall have no effect on Seller's right to a lien on the Vessel for any Bunkers supplied under this Agreement. Any disclaimer of lien stamp or other similar marking placed on the BDN shall be ineffective and invalid and shall not waive or restrict the Seller's right to a lien on the Vessel.

4.6     If at any time before the delivery the financial standing of the Buyer appears to the Seller (in its absolute discretion) to have become impaired or unsatisfactory, the Seller may require cash payment or security to be provided by the Buyer prior to delivery, including such form of payment guarantee as set forth in Section 4.4, failing which the Seller may cancel the delivery without any liability on the part of the latter or its subcontractors.

4.7     Where the Buyer is not the Master, Owner, Manager/Operator, Disponent Owner, Time Charterer, Bareboat Charter or Charterer, or Buyer otherwise does not have authority to bind the Vessel to a lien, until full payment of the full amount due to the Seller has been made the Buyer agrees that the Vessel or any other customer of Buyer shall be in possession of the Bunkers solely as Bailee for the Buyer, and shall not be entitled to use the Bunkers other than for the propulsion of the Vessel, nor mix, blend, sell, encumber, pledge, alienate, or surrender the Bunkers to any third party or other Vessel.

**5**       **SPECIFICATIONS (QUALITY – QUANTITY)**

5.1       The Buyer assumes the sole responsibility for the choice of nominating the quantity and quality of Bunkers and determine (if applicable) potential compatibility with any Bunkers already on board the Vessel. The Buyer also assumes sole responsibility for the selection and fitness of its choice of Bunkers for any particular use or purpose, and the Seller shall assume no responsibility whatsoever for the compliance or fitness of the Bunkers for a specific type of engine or equipment which the Buyer may or may not have agreed upon in any C/P (Charterparty) term or otherwise. This includes but is not limited to the quality, sulphur content and any other specific characteristics of the Bunkers whatsoever.

5.2       Where specifications designate a maximum value, no minimum value is guaranteed unless expressly stated in the Order Confirmation, and conversely where minimum values are provided in a specification, no maximum values are guaranteed unless expressly stated in the Order Confirmation.

5.3       The quality and quantity shall be as agreed between the Seller and the Buyer and shall correspond to the Seller's Order Confirmation. Unless otherwise agreed in writing the Bunkers are delivered and sold based on metric tons in vacuum.

5.4       Where standard specifications are being given or referred to, tolerances in accordance with ISO 4259 in respect of Reproducibility/Repeatability in quality are to be accepted without compensation or other consequences whatsoever.

5.5       In respect of the quantity agreed upon the Seller shall be at liberty to provide, and the Buyer shall accept a variation of 5% from the agreed quantity, with no other consequence than a similar variation to the corresponding invoice from the Seller.

5.6       The Bunkers shall be Seller's commercial grades of Bunkers available at the time and place of delivery. Information regarding the typical characteristics of the Bunkers at any delivery location shall only be indicative of the Bunkers that have been made available at that location and shall not form a part of the specification of the Bunkers to be delivered. All grades of product may contain petroleum industry allowed bio-derived components.

5.7       **EXCEPT AS OTHERWISE SET OUT IN THIS SECTION 5, ALL BUNKERS ARE SOLD "AS IS" AND ANY AND ALL WARRANTIES, INCLUDING ANY IMPLIED WARRANTIES OF FITNESS FOR PURPOSE, SATISFACTORY QUALITY, MERCHANTABILITY, WORKMANLIKE PERFORMANCE, DESCRIPTION OR OTHERWISE, ARE HEREBY EXPRESSLY EXCLUDED AND DISCLAIMED BY THE SELLER AND THE SELLER'S AGENTS MAKE NO WARRANTIES WHICH EXTEND**

**BEYOND THE EXPLICIT DESCRIPTION CONTAINED IN THIS AGREEMENT.**

## 6          MEASUREMENTS – NON CLAUSING OF THE BDN(S)

6.1          The quantities of bunkers shall be determined only from the official gauge or meter of the bunkering barge, tank truck or of the shore tank in case of delivery ex wharf.

6.2          The Buyer's representative shall together with the Seller's representative measure and verify the quantities of Bunkers delivered from the tank(s) from which the delivery is made. When supplied by bunkering barge/tanker the particular barge/tanker will present its tank calibration and ullage sounding records, which are agreed to be the sole valid and binding document(s) to determine the quantity or quantities supplied. Quantities calculated from the Receiving Vessel's soundings shall not be considered.

6.3          Should the Buyer's representative fail or decline to verify the quantities, the measurements of quantities made by the Seller or the Supplier shall be final, conclusive and binding and the Buyer shall be deemed to have waived any and all claims in regard to any variance.

6.4          In the event of complaint/comment on the quantity of Bunkers delivered, the Buyer or the Master of the Vessel shall provide to the Seller a letter of protest separately, pursuant to the Notice requirements set forth in Section 19, followed by a complaint in detail to the Seller, setting out the exact quantity(ies) claimed short supplied, and with full supporting vouchers, in writing within 14 (fourteen) days thereof, failing which, any such claim by the Buyer shall be extinguished as nonexistent, and the Buyer shall be deemed to have expressly waived any such claim against the Seller, the relevant claim being time barred, and the Seller's weight and measurements shall be conclusive evidence of the quantity of Bunkers delivered.

## 7          SAMPLING

7.1          The Supplier shall arrange for four (4) representative samples of each grade of Bunkers to be drawn throughout the entire bunkering operation. The Buyer's representative has the responsibility to witness that such samples are drawn correctly and shall confirm his witnessing thereof and also confirm the proper and correct sealing by signing the labels of the sample bottles.

7.2          In case that drip sampling is not available onboard the barge, tanktruck or shore tank, samples shall be taken as a composite of each tank from which supplies are made, onboard the barge (respectively at the shore tank or tanktruck), divided with 1/3 from each the top, mid and bottom of the tanks.

7.3          The samples shall be securely sealed and provided with labels showing the Vessel's name, identity of delivery facility, product name, delivery date and place and seal

number, authenticated with the Vessel's stamp and signed by the Seller's representative and the Master of the Vessel or his representative. The seal numbers shall be inserted into the BDN, and by signing the BDN both parties agree to the fact that the samples referred to therein are deemed valid and taken in accordance with the requirements as specified in this Section 7.

7.4     Two (2) samples shall be retained by the Seller for ninety (90) days after delivery of the Bunkers, or if requested by the Buyer in writing, for as long as the Buyer reasonably required. The other two (2) samples shall be retained by the receiving Vessel, one of which being dedicated as the MARPOL sample.

7.5     In the event of a dispute in regard to the quality of the Bunkers delivered, the samples drawn pursuant to this Section 7, shall be conclusive and final evidence of the quality of the Bunkers delivered. One, and only one, of the samples retained by the Seller shall be forwarded to an independent laboratory to perform a set of tests, the result of which is to be made available to both parties. Those test results shall be final and binding upon both Buyer and Seller as to the parameters tested. The parties are to use best endeavours to agree the independent laboratory to perform the tests. If, however, no agreement can be reached on the choice of laboratory within 3 days of the Buyer being advised of the Seller opting to have the sample tested, the Seller is at liberty to send the sample to a reputable and independent laboratory of its choice for the tests to be conducted, and those test result will be final and binding upon Buyer and Seller as set out above.

7.6     The seal must be breached only in presence of both parties unless one/both in writing have declared that they will not be present, or fails to be present at the appropriate time and place; and both parties shall have the right to appoint independent person(s) or surveyor(s) to witness the seal breaking.

7.7     No samples subsequently taken shall be allowed as (additional) evidence. If any of the seals have been removed or tampered with by an unauthorized person, such sample(s) shall be deemed to have no value as evidence.

7.8     Any eventual samples drawn by Buyer's personnel either during bunkering or at any later date after bunkering shall not be valid as indicator of the quality supplied. The fact that such samples may eventually bear the signature of personnel on board the barge or tank truck or other delivery conveyance shall have no legal significance as such local personnel have no authority to bind Seller to different contractual terms. Seller shall have no liability for claims arising in circumstances where Buyer may have commingled the products on board the Vessel with other fuels.

## 8      <u>DELIVERY</u>

8.1     The time of delivery, as given by the Seller, has been given as an approximate time, unless it has been otherwise specifically agreed in writing between the parties.

8.2      The time of delivery will only be binding upon the Seller when all information necessary for the Seller to comply with its obligations hereunder, have been properly delivered to the Seller in reasonable time before the delivery. In the event the Nomination addresses a spread of dates for delivery, the Seller has the sole discretion to commence the delivery within any time, day/night/sshinc of these dates, always subject to the circumstances set out below in Section 8.3.

8.3      The Vessel shall under all circumstances be bunkered as promptly as the prevailing circumstances permit, having regard to congestion affecting the delivery facilities of Seller, its Suppliers or Agents and to prior commitments of barges or other delivery means. The Seller shall not be liable for any consequences or any time lost due to the Vessel having to wait for berth for bunkering or for completion of bunkering, and unless otherwise agreed in writing, the Seller shall not be obligated to deliver prior to the nominated date or spread of dates. The Seller is not responsible for delays caused by local customs, pilots, port, or other authorities.

8.4      In any case the Buyer, unless otherwise agreed in writing, must give not less than 72 (seventy two) hours approximate notice of readiness of the Vessel for delivery, which is to be followed by 48 (forty eight) hours and 24 (twenty four) hours such notices, where the last notice must also specify the exact place of delivery. All these notices must be given to the Sellers and the Seller's representatives/agents in writing.

8.5      The Seller shall be entitled to deliver the Bunkers by separate part deliveries, in which case each part delivery shall be construed as a separate delivery.

8.6      The Seller shall not be required to deliver any Bunkers if any customs and/or other government permit required for such purpose has not been obtained in due time before the delivery.

8.7      If the Seller at any time for any reason believes that there may be a shortage of supply at any place and that as a result thereof it may be unable to meet the demands of all its customers, the Seller may allocate its available and anticipated quantity/ies of Bunkers among its customers in such a manner as it may determine appropriate in its sole discretion.

8.8      The Vessel shall be accessible at all times to Seller and Supplier and shall be bunkered as promptly as the circumstances permit. The Seller and/or the Supplier shall not be liable for any demurrage paid or incurred by the Buyer or for any loss, damage or delay of the Vessel (consequential and/or liquidating damages included) of any nature whatsoever due to congestion at the loading terminal, prior commitments of available barges or tank trucks or any other reason.

8.9      The Buyer shall ensure that the Vessel provides a free, safe and always afloat and accessible side for the delivery of bunkers and that all necessary assistance as required by the Seller or the Seller's representative is rendered in connection with

the delivery. If in the Supplier's opinion clear and safe berth is unavailable, delivery might be delayed or, in Seller's option, cancelled and all costs related to above will be on account of the Buyer.

8.10    The Vessel shall moor, unmoor, hoist and lower bunkering hose(s) from the barge(s) whenever required by the Seller, Seller's representative or Supplier, free of expenses and in any way as may be requested to assist the barge equipment to a smooth supply. The Buyer shall make and be responsible for all connections and disconnections between the delivery hose(s) and the Vessel's bunker intake manifold/pipe and ensure that the hose(s) are properly secured to the Vessel's manifold prior to commencement of delivery. During bunkering the Vessel's scuppers must be safely blocked, which blocking must be made by the Vessel's own crew. Furthermore, the Vessel must ensure that all pipes and manifolds and receiving tanks are properly checked and ready to receive the bunkers, including but not limited to ensuring proper opening/closing of relevant valves, without any risk for spillages, etc, during the bunkering. Local further special requirements for receiving bunkers must be followed strictly by the Vessel, whether advised or not by the Seller or the Seller's representative, as it is always the Vessel and the Buyer who remains solely responsible for the knowledge and awareness of such eventual additional requirements for safety reasons.

8.11    In the event that the Vessel is not able to receive the delivery promptly, the Buyer is thereby in default and shall pay damages and/or any reasonable demurrage claim to the barging/supplying facilities and shall indemnify the Seller in each and every respect as a result thereof.

8.12    If the Buyer for whatever reason is unable or refuses to receive the full quantity ordered, the Seller shall have the right to invoice the Buyer for the loss incurred by having to transport the undelivered Bunkers back to the storage or by having to sell the Bunkers in a degraded form or at a lower price. The Seller may exercise this right without prejudice to the Seller's other rights for damages or otherwise pursuant to these conditions.

8.13    The Vessel shall provide and have appropriate and segregated tanks to receive the contracted quantity of Bunkers; and the Vessel shall always be able to perform its own blending on board if any blending is deemed to be required by the Buyer. The Vessel shall upon delivery test the Bunkers supplied by running her engines or auxiliaries or equipment, for which the Bunkers are supplied, for a minimum of 1 (one) hour to determine that the Bunkers are satisfactory. In the event the Bunkers are not considered satisfactory, the Seller and Supplier are to be notified in writing immediately after such test period has expired. Otherwise, it shall be deemed that the Bunkers were satisfactory and that in any event the Buyer has waived any right to claim in this regard.

8.14    If delivery is required outside normal business hours or on local weekends, Saturday, Sunday, national religious or public holidays the extra expenses incidental to such delivery shall be reimbursed by the Buyer as additional costs.

8.15    In the event the Bunker delivery is made by vessel or barge as a ship-to-ship transfer, any damage caused by contact and/or collision and/or swell and/or other weather or sea related condition or incident, is to be dealt with by the Owners directly with the owners of the units involved, and Seller/Supplier shall not be held nor be responsible for any such damages. If, however, any of the involved units choose to pursue Seller and/or Supplier, Buyer will fully indemnify and hold Seller harmless in relation thereto.

8.16    For safety reasons it is agreed that it is solely the Master of the bunkering barge that determines whether mooring alongside is safe, taking weather, swell and forecasts into consideration. Supplier/Seller not to be held responsible for any delays, demurrages, liquidating damages or similar whatsoever as a result of any eventual delays caused by any decision by the Master of the barge in this connection. Supplies being always performed weather permitting.

8.17    Without prejudice to any other Sections(s) herein, any and all supply(ies) will be based on as per best endeavours only if the receiving Vessel arrives outside the originally agreed time split as per the Order Confirmation forwarded.

**9**      **RISK AND TITLE**

9.1     Delivery shall be deemed completed and all risk and liabilities, including loss, damage, deterioration, depreciation, contamination, evaporation or shrinkage to the Bunkers delivered and responsibility for loss, damage and harm caused by pollution or in any other manner to third parties shall pass to the Buyer from the time the Bunkers reach the flange/connecting pipe line(s)/delivery hoses provided by the Seller on the barge/ tank truck/shore tank, and in the event the Bunkers are delivered by drum, as the Bunkers passes the Vessel's rail.

9.2     Delivery shall be deemed completed and all title to the Bunkers shall pass in full to the Buyer from the time the Bunkers reach the flange/connecting pipe line(s)/delivery hoses provided by the Seller on the barge/ tank truck/shore tank, and in the event the Bunkers are delivered by drum, as the Bunkers passes the Vessel's rail.

9.3     The provisions of this Section 9 do not prejudice or in any way limit the Seller's right to arrest/attach the Vessel and/or sister ship and/or any sister or associate ship and/or other assets of the Buyer (or the Owner of the Vessel or any other party liable), wherever situated in the world, without prior notice.

**10**     **PAYMENT**

10.1 Payment for the Bunkers and/or the relevant services and/or charges shall be made by the Buyer as directed by the Seller within the period agreed in writing and placed on the Invoice. Notwithstanding any other section of these GTC, unless Seller agrees in writing to extend credit to Buyer, payment is due prior to delivery of the Bunkers. If Seller agrees in writing to extend credit to Buyer, payment shall be considered untimely and past due and Buyer shall be deemed in default of payment, if not received on or before the due date set forth on the Invoice, as set forth in Section 10.2.

10.2 Payment shall be deemed to have been made on the date on which the Seller has received the full payment and such is available to the Seller. If payment falls due on a non-business day, the payment shall be made on or before the business day nearest to the due date. If the preceding and the succeeding business days are equally near to the due date, then payment shall be made on or before the preceding business day.

10.3 Payment shall be made in full, without any set-off, counterclaim, deduction and/or discount free of bank charges to the bank account indicated by the Seller on the respective invoice(s).

10.4 Financial Standing and Default:

10.4.1 If at any time after delivery but before the due date the financial standing of the Buyer appears to the Seller (in its sole discretion) to have become impaired or unsatisfying, the Seller may require immediate full payment of all its invoices due and/or those not yet due, or such security as it shall deem to be satisfactory.

10.4.2 In the event that the Buyer shall default in making any payment due, as set forth in as set forth in Sections 10.1 and 10.2, the Seller may suspend deliveries of Bunkers until such payment has been made in full (together with default/delay compensation and costs), or the Seller may, in its discretion, elect to treat such default as a serious breach of the Agreement and thereupon terminate the Agreement in whole or in part without prejudice to any claim against the Buyer for damages, including cancellation charges. Such termination or suspension shall not relieve the Buyer of any obligation undertaken by virtue of an Agreement so terminated.

10.4.3 Where the Seller has extended any kind of credit facility to a group of companies or associated companies, default by any one relevant Buyer in respect to any invoice of the Seller, as set forth in as set forth in Sections 10.1 and 10.2, shall give the right to the Seller to cancel all credit arrangements of the entire group or of all the associates, whereupon sub- clauses 10.4.1 and 10.4.2 shall apply as appropriate.

10.4.4    Where the Buyer fails to pay timely, as set forth in Sections 10.1 and 10.2, the Seller has the right to (without prejudice to its rights to receive default/delay compensation) take all appropriate steps to secure and enforce its claim; the Seller may also unilaterally cancel any credit arrangements agreed with/extended to the Buyer.

10.4.5    Where the Buyer fails to pay Seller timely, as set forth in Sections 10.1 and 10.2, and a maritime lien right against the Vessel has come into existence in favor of the Buyer, any such maritime lien right shall be assigned and transferred in full to the Seller and shall inure to the benefit of the Seller, without prejudice to the Seller to exercise or invoke any remedies or rights available to it against the Buyer or the Vessel under this Agreement, by statute, or the laws of any jurisdiction, where the Seller, at its sole discretion notifies the Buyer in writing that the terms of this Section 10.4.5 are invoked.

10.4.6    All judicial and extrajudicial costs and expenses, including pre-action costs, fees, expenses and disbursements of the Seller's lawyers/attorneys-at-law, incurred in connection with nonpayment or delayed payment or by any other breach by the Buyer of these conditions, shall be for the Buyer's account, immediately payable by the latter to the Seller. In case of litigation, the Buyers shall also pay all the relevant expenses to the Seller, including but without limitation all his reasonable attorneys/lawyers' fees, costs and disbursements.

10.5    Any delay in payment of the full sum due, as set forth in Sections 10.1, 10.2, and 10.3, shall entitle the Seller to interest at, the rate of 2 (two) per cent per month (compounded monthly for each month [or part thereof] of nonpayment) without prejudice to any rights or remedies available to the Seller. Furthermore, the Seller is entitled to charge a delayed payment administration fee of USD 1.50 per mton supplied, or the equivalent thereof in local currency, with a minimum administration fee of USD 350.00 for each delivery made. All reasonable attorney's fees and costs incurred by Seller in connection with the collection of overdue payments shall be for the sole account of the Buyer.

10.6    Payments made by the Buyer in respect of a supply of Bunkers shall at all times be credited in the following order: (1) costs of any kind or nature, including but not limited to legal costs and attorney's fees, (2) interest and administrational fee, and (3) invoices in their order of age, also if not yet due, or in Seller's sole discretion to specify a payment to any such invoice Seller considers relevant.

10.7    All costs borne by the Seller in connection with the collection of overdue payments, including those of the Seller's own legal and credit department and, including but not limited to, reasonable attorneys' fees, whether made in or out of court and in

general all costs in connection with breach of any agreement by the Buyer, including but not limited to reasonable attorneys' fees, shall be for the sole account of the Buyer.

10.8   The Seller shall at all times, in its absolute discretion, be entitled to require the Buyer to provide the Seller what the Seller deems to be proper security for the performance of all of Buyer's obligations under the Agreement. Failing the immediate provision of such security upon Seller's demand, the Seller shall be entitled to stop any further execution of any agreement(s) between the parties until such time as the Buyer has provided the required security.

10.9   It is mutually agreed that the Bunkers provided by the Seller to the Buyer under the terms of this Agreement have been ordered by the Buyer in the ordinary course of business between Seller and Buyer. All payments from Buyer to Seller for Bunkers supplied under this Agreement are deemed to have been made in the ordinary course of business between Seller and Buyer, according to these ordinary business terms agreed between them.

10.10  The Buyer shall not assign the Agreement or any rights or obligations hereunder without the prior consent in writing of the other Seller. The Seller may without the Buyer's consent assign all or a portion of its rights to receive and obtain payment under the Agreement.

## 11   **CLAIMS**

11.1   In addition to the obligations referred to in Section 6.4 herein, any claim in connection with the quantity of the Bunkers delivered must be notified by the Buyer, or the Master of the Vessel, to the Seller immediately after completion of delivery in the form of a letter of protest. If the Buyer or the Vessel's Master fails to present such immediate notice of protest to the Seller or Supplier, such claim shall be deemed to have been waived and shall be absolutely barred for all purposes.

11.2   Always without prejudice to Section 8.13 herein, any and all claims concerning the quality of the Bunkers delivered or time consumed for the entire operation, shall be submitted to the Seller in writing within fourteen (14) days after delivery with a clear statement as to the nature or the claim(s) along with appropriate supporting documentation, failing which any rights to complain or claim compensation of whatever nature shall be deemed to have been waived and absolutely barred for all purposes. Furthermore, and notwithstanding any other Section of these GTC, Seller shall not be responsible for any claim whatsoever arising in circumstances where there is or has been commingling of Bunkers delivered by Seller with other fuel aboard the Vessel or Buyer's Delivery Vessel.   Any such claim shall be submitted in accordance with the Notice requirements set forth in Section 19.

11.3   The Buyer shall be obliged to make payment in full and fulfil all other obligations in accordance with the terms of the Agreement and these conditions, whether or not

it has any claims or complaints, and Buyer's failure to do so shall result in any rights to complain or claim compensation being waived and absolutely barred for all purposes. If Buyer submits a claim against Seller with respect to the quality or quantity of the products supplied, the Seller or the Seller's nominated representative shall be entitled to board the Vessel and investigate the Vessel's records, log books, engine logs, etc., and to make copies of any such document the Seller or the Seller's nominated representative may consider necessary for its investigations connected to the case. The Buyer shall allow this, or where Buyer has chartered the Vessel then the Buyer shall obtain authorization from Owner to allow the herein stated steps and to provide full assistance and support by the Vessel's officers and crew in any such manner the Seller or Seller's nominated representative may require. Failure to allow boarding and/or produce required copies of documents and/or lack of full cooperation by the Vessel's officers and crew shall constitute a waiver of the Buyer's claim.

11.4      The Seller shall be allowed, and the Buyer, Owner, Officers and Crew onboard the receiving Vessel shall agree and in any way support and cooperate with Seller's representative, to draw samples from the Vessel's storage tanks, settling tanks and service tank and/or from before and after the Vessel's centrifuges to have extra tests carried out for such samples at independent laboratory.

11.5      Any claim by Buyer concerning in any way removal or debunkering of the Bunkers from the Vessel shall be submitted to the Seller in writing within fourteen (14) days after delivery, failing which any rights to complain or claim compensation of whatever nature for removal of the Bunkers shall be deemed to have been waived and absolutely barred for all purposes. Buyer's sole remedy for removal or debunkering of the Bunkers from the Vessel shall be for Seller to arrange for removal of the Bunkers in the area of Houston, Texas. Should Buyer proceed to remove the Bunkers in contravention of this Section 11.5, then Buyer waives and is barred from bringing any claims for reimbursement, damages of any kind whatsoever, or specific performance in connection with or arising from the removal of the Bunkers.

11.6      In each and every case, any and all claims of the Buyer shall be time barred unless legal proceedings have been commenced at the competent court set forth in Section 16 hereof and served within 12 (twelve) months from the date of delivery of the Bunkers, or the date that delivery should have commenced pursuant to the Order Confirmation from the Seller.

## 12       LIABILITY – LIMIT TO SELLER'S LIABILITY

12.1      Seller shall not be liable for any exemplary, consequential, or incidental damages, including, without limitation, deviation costs, demurrage, loss of time, loss of cargo or charter cancelling date, loss of hire, loss of income and/or earnings and/or profits, or for any damage to any Vessel or Buyer's delivery vessel or to their engines or tanks. In any event and notwithstanding anything to the contrary

herein, liability of the Seller shall under no circumstances exceed the invoice value of the Bunkers supplied under the relevant agreement to the relevant Vessel.

12.3    No servant, supplier or agent of the Seller (including independent (sub)contractors from time to time employed by the Seller) shall be liable to the Buyer for loss, damage or delay, while acting in the course of or in connection with its employment and/or agency for the Seller. Without prejudice to the above every exemption, limitation, condition and liberty herein contained, and every right, exemption from or limit to liability, defense or immunity of whatever nature applicable to the Seller or to which it is entitled hereunder shall also be available and shall extend to protect every such servant, representative or agent of the Seller acting as aforesaid.

## 13    <u>INDEMNITY</u>

13.1    The Buyer shall defend, indemnify, and hold harmless the Seller and the Seller's sub-contractors and agents from and against any and all claims, demands, damages, actions, causes of action, suits and all other liabilities for loss of, or damage to, property (including property of the Seller, the Buyer, and third parties) or for death of or injury to any person (including employees or agent of the Seller, the Buyer, or a third party) and against all associated costs (including reasonable attorney's fees and court costs), losses and expenses arising out of or in connection with the Agreement, arising out of or caused by the fault or negligence, in whole or in part, strict liability, or breach of warranty of Buyer or Buyer's sub-contractors.

## 14    <u>EXEMPTIONS AND FORCE MAJEURE</u>

14.1    The Seller shall not be liable for any loss, claim, damage, delay or demurrage due to any delay or failure in their performance under this Agreement (a) by reason of compliance with any order or request of any government authority, or person purporting to act therefore, or (b) when supply of the Bunkers or any facility of production, manufacture, storage, transportation, distribution or delivery contemplated by the Seller is interrupted, delayed by congestion or other event (also see Section 8.3 above), or by unavailability of product and/or barge equipment or by inadequate resource for any cause whatsoever which interruption, delay, unavailability or inadequate resources is not within the immediate control of the Seller, including (without limitation) if such is caused wholly or partly by labor disputes, strikes, stoppages, lock-out, governmental intervention, wars, civil commotion, riot, quarantine, fire flood, earthquake, accident, storm, swell, ice, adverse weather or any act of God. The Seller shall not be required to remove any such cause or replace any affected source or supply or facility if doing so shall involve additional expense or a deviation from the Seller's normal practices. The

Seller shall not be required to make any deliveries which fail in whole or in part as a result of the causes set out in this Section at any later time.

14.2    If the Buyer exercises reasonable diligence, the Buyer shall not be liable for failure to receive any particular delivery if prevented therefrom by force majeure. The Buyer shall indemnify the Seller for any damage caused by the Buyer, the Buyer's agent or employees in connection with deliveries hereunder.

14.3    Declaration of Force Majeure shall be given without unduly delay once such event(s) have come to the knowledge of the respective party declaring same. However, under no circumstances and for no reason whatsoever, can Force Majeure entitle the Buyer not to pay promptly any invoice of the Seller.

14.4    In the event that the Seller, as a result of force majeure, can only deliver a superior grade of bunkers, the Seller is entitled to offer the said grade, and the Buyer must accept delivery thereof and pay the applicable price.

## 15    <u>BREACH/CANCELLATION</u>

15.1    Without prejudice to any other remedies and rights, the Seller shall have the option immediately to cancel the Agreement in full or in part, or to store or procure the storage of the Bunkers, in whole or in part, for the account and risk of the Buyer and to charge the Buyer the expenses thereby incurred, or to hold the Buyer fully to the agreement, or take any other measures which the Seller deems appropriate, without prejudice to its rights of indemnification, without any liability on the side of the Seller, in any one of (but not limited to) the following cases:

15.1.1    when the Buyer, for whatever reason, fails to accept the Bunkers in part or in full at the place and time designated for delivery;

15.1.2    when the Buyer fails in part or in full to comply with its obligations to pay any amount due to the Seller and/or provide security as set out in these GTC;

15.1.3    when, before the date of delivery, it is apparent in the opinion of the Seller that the financial position of the Buyer entails a risk to the Seller; or

15.1.4    when, in case of force majeure, the Seller is of the opinion that the execution of the agreement should be cancelled.

15.2      The Seller may terminate any Agreement with the Buyer in whole or in part, in its full discretion, upon the breach of any provisions hereof by the Buyer or in the event that the Buyer fails to make or suspends payment, ceases to carry on business, makes an arrangement with its creditors or undergoes any form of bankruptcy, administration, re-organization or asset rearrangement.

15.3      The Seller has the option to immediately cancel the Agreement for the account and risk of the Buyer if at any time the Seller, in its sole discretion, has reasonable grounds to believe that:

     a)      The Vessel; or
     b)      The Charterer of the Vessel; or
     c)      The fully or partly Owner(s) of the Vessel; or
     d)      Any officers of the Vessel; or
     e)      The Operator and/or Manager of the Vessel; or
     f)      Any other person or entity in any way related to the Agreement or delivery is/are
     1)      Iranian(s); or
     2)      Related in any way to Iran or Iranians; or
     3)      Listed on the US OFAC Specially Designated Nationals List; or
     4)      Covered by any US, UN- and/or EU sanctions; or
     5)      Covered by any sanctions of any other jurisdiction and/or administration

Under no circumstances can the Seller be held liable for any loss, delays, claims or damages of whatever kind suffered by the Buyer due to a cancellation under this Section.

The Buyer must inform the Seller immediately the Buyer becomes aware of or has reasons to believe that any of the above items a) to f) in combination with any of the above items 1) to 5) are fulfilled/apply.

Should the Buyer breach its obligation to inform the Seller, the Buyer shall fully indemnify and keep the Seller harmless for any damage or loss caused by such breach, including consequential or liquidated damages.

15.4      The Buyer acknowledges that any agreements with the Seller and any actions related to such agreements as well as any interaction with third parties related to such agreements are covered by certain anticorruption laws and regulations which can include any anticorruption law, including but not limited to the U.S. Foreign Corrupt Practices Act ("FCPA"). Therefore, the Buyer declares to comply with all applicable anticorruption laws and regulations and agrees that the Buyer has not, and will not, offer, promise, pay, or authorize the payment of any money or anything of value, or take any action in furtherance of such a payment, whether by direct or indirect means, to any public official or private individual to influence the decision of such person in the performance of his duties to a government or to his company. Any breach of this clause will void the related Agreement and in the

sole discretion of the Buyer any other Agreement between the parties, making any claims for payment, delivery or any other obligation of the Seller under this Agreement void. The Buyer is liable for all and any costs or losses incurred by the Seller due to such breach and/or an Agreement becoming void as a consequence.

## 16      SPILLAGE, ENVIRONMENTAL PROTECTION

16.1      The Buyer represents and warrants that the Vessel is properly insured, equipped, maintained and operated so as to avoid the escape, spillage or discharge of oil ("a spill") at the time of the Bunkers delivered hereunder. If a spill occurs while the Bunkers are being delivered, the Buyer shall promptly take such action as is necessary to remove the spilled Bunkers and mitigate the effects of such spill. Without prejudice to the generality of the foregoing the Seller is hereby authorized by the Buyer in the absolute discretion of the Seller, but at the expense of the Buyer, to take such measures and incur such expenses (whether by employing its own resources or by contraction with others) as are necessary in the judgment of the Seller to remove the spilled Bunkers and mitigate the effects of such spill. The Buyer shall cooperate and render such assistance as is required by the Seller in the course of the action. All expenses, claims, costs, losses, damages, liability and penalties arising from spills shall be borne by the party that caused the spill by a negligent act or omission. If both parties have acted negligently, all expenses, claims, losses, damages, liability and penalties, shall be divided between the parties in accordance with the respective degree of negligence. The burden of proof to show the Seller's negligence shall be on the Buyer. The Buyer shall give the Seller all documents and other information concerning any spill or any program for the prevention thereof that is required by the Seller, or is required by law or regulation applicable at the time and place of delivery.

## 17      DELAYS AND CANCELLATIONS

17.1      Notwithstanding anything else to the contrary herein, and without prejudice to any rights or remedies otherwise available to the Seller, the Buyer, by its acceptance of these conditions, expressly agrees that Seller has the sole discretion to cancel or to adjust prices in the event the Vessel is suffering a delay exceeding 24 hours from the (last) nomination date.

17.2      If the Buyer for whatever reason (including circumstances entirely outside Buyer's control) cancels the Agreement, where Order Confirmation has been sent by Seller, the Buyer shall be liable for any and all losses suffered and liabilities incurred by the Seller and/or the Supplier as a result of such cancellation, including, but not limited to, barge costs, re-storing of the Bunkers, and hedging costs, and also in Seller's sole option any difference between the contract price of the undelivered product and the amount received by the Seller upon resale to another party or, if another buyer cannot be found, any market diminution in the value of the product as reasonably determined from available market indexes.

These losses and liabilities shall be indemnified by a minimum amount of USD $4,000 by way of agreed minimum liquidated damages, and shall be indemnified in full if they in total exceed USD $4,000.

## 18   APPLICABLE LAW AND FORUM

18.1   This Agreement and any suit, claim, dispute, or action arising out of or in connection with this Agreement shall be governed and construed in accordance with the General Maritime Law of the United States of America, and to the extent that such is inapplicable or may be supplemented, then the laws of the State of Texas, without reference to any conflict of laws rules. The 1980 United Nations Convention on Contracts for the International Sale of Goods (CISG) shall not apply.

18.2   The General Maritime Law of the United States and the Commercial Instruments and Maritime Liens Act (46 U.S.C. § 31343, *et seq.*) shall always apply with respect to the existence of a maritime lien, regardless of the country in which Seller takes legal action. Seller shall be entitled to assert its rights of lien or attachment or other rights, whether in law, in equity or otherwise, in any jurisdiction where the Vessel may be found.

18.3   Without prejudice to any other Section herein, the Buyer and Seller agree that any suit, claim, dispute, controversy or action arising out of or in connection with this Agreement, including without limitation, any dispute or action with multiple defendants/claimants and indemnity claims, shall be litigated, if at all, in a federal court located in Harris County, Texas to the exclusion of the courts of any other country, state, county, or city. In the event that a federal court lacks jurisdiction, then the Buyer and Seller agree to litigate any suit, claim, dispute, controversy or action arising out of or in connection with this Agreement, including without limitation, any dispute or action with multiple defendants/claimants and indemnity claims, in a state court of competent jurisdiction located in Harris County, Texas to the exclusion of the courts of any other country, state, county, or city.

18.4   Buyer and Seller agree that any dispute or claim arising in connection with a Vessel detained by Seller at any port, place or anchorage within the United States of America and its territories shall be transferred and submitted to a federal court located in Harris County, Texas to the exclusion of the courts of any other country, state, county, or city. In the event that substitute *res* is provided as security in place of the Vessel, such substitute *res* shall also be transferred and submitted to a federal court located in Harris County, Texas to the exclusion of the courts of any other country, state, county, or city.

18.5   This Agreement shall constitute good cause that in the event Seller assert its rights of lien or attachment or other rights, including as set forth in Section 16.2, Seller shall not be required to post counter-security under Rule E of the Supplemental Rules for Admiralty and Maritime Claims or similar laws or rules of any jurisdiction.

18.6     Should Buyer institute any action based on multiple defendants/claimants or multiple claims made against it arising out of the supply of Bunkers under this Agreement, Buyer waives any right to recover attorney's fees or costs, whether based on statute, rule, or contract, against Seller.

18.7     Both parties agree that, to the extent allowed by the governing law, each party hereby waives all rights to a jury trial with respect to any dispute, claim or action involving this agreement.

18.8     Both parties agree to waive formal service of process concerning any legal proceeding brought pursuant to or arising out of the Agreement, and Seller and Buyer agree that they may be served via U.S. Mail at the address set forth for Seller in Section 19.1, and set forth for Buyer on the Order Confirmation.

**19       NOTICE**

19.1     All notices, statements, or other communications to be given by the Buyer to the Seller shall be sufficient if given in writing by e-mail or certified mail as follows:

To the Buyer: at the email address and mailing address of the Buyer provided to the Seller prior to issuance of the Order Confirmation, or if the Agreement is concluded by or through an agent of the Buyer, to such agent at a designated e-mail or mailing address.

To the Seller:   Attn: Marketing
GCC Supply & Trading LLC
3773 Richmond Avenue
Suite 250
Houston, Texas 77046
marketing@gccllc.com

**20       VALIDITY**

20.1     These terms and conditions shall be valid and binding for all offers, quotations, prices and deliveries made by the GCC Bunkers LLC, any associated company, representative or agent as of July 1, 2021, or at any later date.

20.2     This Agreement constitutes the entire understanding between the parties and supersedes all prior oral or written agreement, representations, or warranties.

20.3     These GTC are available at the website www.gccllc.com, on which site as well the Sellers may notify amendments, alterations, changes or verifications to same. Such amendments, alterations, changes or verifications are deemed to be a part of the entire terms once same have been advised on the website.